UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY GONSALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:23-cv-02721-SCR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34.  For the reasons that follow, the Court will DENY Plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

**I.  PROCEDURAL BACKGROUND**

Plaintiff applied for DIB in July 2021.  Administrative Record ("AR") 184-190.[1]  Plaintiff alleged the disability onset date was March 11, 2019.  AR 184.  The application was disapproved initially, and on reconsideration.  On September 29, 2022, administrative law judge ("ALJ")

---

[1] The AR is electronically filed at ECF No. 8-2.  AR page references are to the number in the lower right corner of the page, not the CM/ECF generated header.  References to briefs are to the page number generated on the CM/ECF header.

1

Serena Hong presided over a hearing on Plaintiff's challenge to the disapprovals. AR 41-69 (transcript). Plaintiff participated in the telephonic hearing. Plaintiff was represented by counsel at the hearing. AR 60. George Bluth, a vocational expert, also testified.

On February 10, 2023, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 15-31 (decision). On September 18, 2023, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-3 (decision).

Plaintiff filed this action on November 21, 2023. ECF No. 1. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 13 (Plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion). Plaintiff did not file an optional reply brief.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1978, and was 43 years old when she filed her application. AR 184. Plaintiff has a high school education and vocational training to work as a medical assistant. AR 47. Plaintiff testified she was unable to work due to lower back and left leg/knee pain. AR 51. Plaintiff was injured in a fall at work in March 2019. AR 470. Plaintiff received workers' compensation benefits. AR 46. Plaintiff's past work experience including working as a phlebotomist, CNA (certified nurse assistant), and cashier. AR 48-51.

At the administrative hearing on September 29, 2022, Plaintiff testified that she suffered from constant lower back and knee pain. AR 55. Plaintiff testified that two or three days each month the pain would be worse and prevent her from getting out of bed. AR 55. Plaintiff testified she could stand for an hour, walk for a half hour, and sit for an hour without having to change position. AR 56. Plaintiff testified she was taking Aleve for the pain. AR 57. Plaintiff testified doctors had mentioned surgery, "but I don't know what happened with all that." AR 57. She testified that possibly doctors did not want to do the surgery due to her weight. AR 57-58. Plaintiff had undergone a weight loss surgery in July 2022. AR 25; ECF No. 13 at 8. At the time of the administrative hearing, Plaintiff testified her weight was down to 299.

Plaintiff testified that she lives with her two adult children, a grandchild, and her mother. AR 60. Plaintiff stated that on a typical day she gets up around 8 or 9 a.m., is able to shower on her own, and then, "I don't really do much around the house." AR 60. She stated she watches TV, plays some games on her phone, and used to do some arts and crafts. AR 60. Plaintiff testified she was able to go shopping and could drive for short periods of time. AR 61.

### III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the

ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

A claimant is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not

4

disabled. If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue,* 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since March 11, 2019, the alleged onset date (AR 21).
>
> 2. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of the left knee; chronic obstructive pulmonary disorder; and morbid obesity (AR 21).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 22).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can stand for up to one hour increments. The claimant can walk up for to 30 minute increments. The claimant can sit for up to one hour increments. The claimant can occasionally push and pull or use foot controls with her left lower extremity. The claimant cannot climb ladders, ropes, or scaffolds and cannot kneel or crawl. The claimant can occasionally climb ramps and stairs, stoop, balance, and crouch. The claimant must avoid concentrated exposure to extreme cold, pulmonary irritants, such as dusts, fumes, and gases, and hazards, such as unprotected heights and moving machinery.
>
> 5. [Step 4] The claimant is unable to perform any of her past relevant work (AR 28).

5

6. [Step 5] The claimant was born in 1978 and was 41 years old, which is defined as a "younger individual" on the alleged onset date. (20 CFR §§ 404.1563) (AR 29).

7. [Step 5, continued] The claimant has at least a high school education (AR 29).

8. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2) (AR 29).

9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (AR 29).

10. The claimant has not been under a disability, as defined in the Social Security Act, from March 11, 2019 through the date of the ALJ's decision. (AR 30).

## VI.  ANALYSIS

Plaintiff raises five points of error. Plaintiff alleges that the ALJ erred by: (1) failing to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of physical dysfunction; (2) improperly evaluating the treating source opinions; (3) improperly formulating the RFC; and (4) failing to satisfy the Commissioner's burden at Step 5. Plaintiff also argues (5) that new and material evidence submitted to the Appeals Council merits remand. ECF No. 13 at 9. Defendant disputes each of these claims of error in its answering brief, while acknowledging that there was a "typographical error" made by the ALJ and by the vocational expert (VE). The Court will address each point below.

1. Plaintiff's Subjective Symptom Testimony

Plaintiff contends the ALJ did not articulate clear and convincing reasons for discounting her testimony of physical dysfunction. ECF No. 13 at 9-12. Defendant argues that the ALJ did give clear and convincing reasons supported by substantial evidence, which included: 1) consideration of the objective medical evidence; 2) consideration of activities of daily living; and 3) consideration of Plaintiff's treatment history. ECF No. 15 at 4-7.

The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her physical dysfunction. Evaluating the credibility of a plaintiff's subjective testimony

1  is a two-step process: First the ALJ must "determine whether the claimant has presented objective
2  medical evidence of an underlying impairment which could reasonably be expected to produce
3  the pain or other symptoms alleged .... In this analysis, the claimant is not required to show that
4  her impairment could reasonably be expected to cause the severity of the symptom she has
5  alleged; she need only show that it could reasonably have caused some degree of the
6  symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).
7  Objective medical evidence of the pain or fatigue itself is not required. *Id.* (internal citations
8  omitted).
9        Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the
10  claimant's testimony by offering "specific, clear and convincing reasons for doing
11  so." *Id.* (internal citations omitted).  While an ALJ's credibility finding must be properly
12  supported and sufficiently specific "an ALJ is not required to believe every allegation of disabling
13  pain, or else disability benefits would be available for the asking, a result plainly contrary to the
14  Social Security Act." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (internal citation and
15  quotation omitted).  In weighing a claimant's credibility, an ALJ may consider, among other
16  things, inconsistencies either in the claimant's testimony or between her testimony and her
17  conduct, claimant's daily activities, her work record, and testimony from physicians and third
18  parties concerning the nature, severity, and effect of the symptoms of which claimant complains.
19  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  "If the ALJ's credibility finding is
20  supported by substantial evidence in the record, [the court] may not engage in second-guessing."
21  *Id.* at 959.
22        Plaintiff testified that she is unable to work due to pain in her back and left leg/knee.  AR
23  51.  She testified the pain is "constant" and that two or three days a month it worsened and she
24  wouldn't get out of bed.  AR 55.  Plaintiff testified she could stand for about an hour at once,
25  walk for 30 minutes, and sit for about an hour at a time.  AR 56.  Plaintiff stated her left knee
26  bothers her "constantly" and she gets swelling in her leg and sometimes needs to elevate it.  AR
27  58.  Plaintiff testified on a typical day she doesn't do much around the house, spends four to six
28  ////

hours lying down, and watches TV. AR 57, 60. Plaintiff testified she is able to go shopping and can drive. AR 61.

The ALJ considered Plaintiff's testimony and her function report and acknowledged that Plaintiff alleged greater limitations than the record supported. AR 23. The ALJ found that plaintiff's medical impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 24. The ALJ gave at least three reasons for discounting Plaintiff's testimony.

First, the ALJ found Plaintiff's subjective testimony inconsistent with the objective medical evidence. AR 24-26. An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). In this case, physical examinations frequently revealed objective findings that were within normal limits – such as normal strength, range of motion, and gait. In August 2019, a physical examination showed normal gait, and normal overall range of motion, strength, and muscle tone, with some limited active range of motion in the lumbar spine and no gross edema or evidence of injury to the left knee. AR 508. At visits during 2021, Plaintiff presented with some pain and tenderness, but had normal gait, intact sensation, and full strength. AR 682, 686. The ALJ observed that an MRI of the lumbar spine in November 2021 showed mild to moderate degenerative changes, but no significant spinal canal stenosis or central root compression. AR 24, 759.

At an examination in May 2019, just two months after the trip and fall at work, Plaintiff saw Dr. Wilson and reported that both her back and knee "symptoms are improved." AR 489. The musculoskeletal exam was positive for pain and muscle spasm of the back, but Plaintiff had full range of motion, normal gait, and "no gross edema or evidence of injury" to the knee. AR 490. Dr. Xeller, M.D., found that Plaintiff had no atrophy or reflex change. AR 214. The ALJ

8

recognized that the objective medical evidence supported limiting Plaintiff's ability to work to a sedentary exertional level, but reasonably concluded that the alleged severity of Plaintiff's symptoms was somewhat inconsistent with the objective medical evidence.

Second, the ALJ found that Plaintiff's level of treatment, or lack of treatment, was not consistent with the severity of symptoms that Plaintiff alleged. A claimant's treatment history is a valid consideration in evaluating subjective symptom testimony. *See* 20 C.F.R. 404.1529(c)(3). The ALJ stated: "Notably, the record includes no evidence of the claimant receiving significant physical therapy, pain relief injections, or surgical intervention after 2019 to treat her lumbar spine impairment." AR 24. The ALJ similarly found "no evidence of the claimant receiving significant physical therapy, pain relief injections, or surgical intervention after 2019 to treat her knee impairment." AR 25. The ALJ noted that although Plaintiff had some doctor's appointments between 2020 and 2022, there was "no overarching treatment plan" and the doctors did not recommend any specific treatment other than medication.[2] AR 27.

"[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt*, 53 F.4th at 500, citing *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Physical therapy (PT) is generally considered conservative treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (characterizing the use of physical therapy, anti-inflammatory medication, and a transcutaneous electrical nerve stimulation unit as "conservative treatment"). Plaintiff received some benefit from PT. In July 2019, she described "some pain relief with physical therapy." AR 356. After her first PT session, it was reported she was "progressing well" and her back problems were "responding well to mechanical

---

[2] As indicated above, the ALJ noted that Plaintiff's providers were not recommending surgical intervention. AR 27. However, there is some ambiguity in the record as to whether this is because Plaintiff's symptoms were not particularly severe or because of other reasons (such as Plaintiff's obesity). In a May 2021 note, Dr. Rakesh writes that Plaintiff "was seen by the orthopedic spine surgeon who suggested conservative means of treatment, surgical procedure cannot be beneficial." AR 674. Dr. Rakesh's treatment plan stated that "no surgical procedure can be beneficial at this time," yet his care plan left open the possibility of future surgical consultation if needed. AR 675. Dr. Burt, an orthopedic surgeon, completed a report for the Texas Department of Insurance/Worker's Compensation in June 2021. Dr. Burt noted that Plaintiff's specialists had "not advised" surgery shortly after Plaintiff's injuries, but did not explain why. AR 717. From Plaintiff's testimony at the hearing, it appeared she was not certain why surgery was not pursued, and that it may have been due to her obesity.

diagnosis and therapy." AR 515. On June 24, 2019, Dr. Goldsmith's note states that Plaintiff "states she had seven sessions of therapy with her knee and has made some improvement." AR 513. A July 17, 2019 note states: "Patient has completed PT and feels better but pain persists." AR 356. The Court acknowledges that there are other indications in the record that PT was not particularly successful. However, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Third, the ALJ found that Plaintiff's activities of daily living were "not consistent with the alleged degree of impairment." AR 28. The ALJ noted that Plaintiff was able to perform personal care, do light household chores, and go shopping. AR 28. An ALJ may discount a claimant's subjective symptom testimony when the limitations described are inconsistent with a claimant's activities of daily living. *See Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding that claimant's daily activities which included playing video games, watching TV, using library computer, using public transport, shopping, preparing meals, and socializing constituted substantial evidence to support the ALJ's decision). Here, substantial evidence supports the ALJ's decision. The ALJ's assessment of Plaintiff's daily activities is consistent with Plaintiff's testimony and the function reports of Plaintiff and her daughter, Victoria Gonzalez. AR 246-265. The ALJ discussed Ms. Gonzalez's report and found that it shows Plaintiff engaged in "reasonably normal activities of daily living." AR 28. Additionally, provider notes from May 2021 state that medication is "helping with activities of daily life," which are indicated as "regular." AR 674; *see also* AR 677 ("She can perform Activities of Daily Living Independently."). Although Plaintiff's daily activities are limited, even where a claimant "experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment." *Smartt*, 53 F.4th at 499 (internal citation and quotation omitted). In May 2021, Plaintiff reported to her health care provider that back pain had decreased and she "went to the zoo and was walking with plenty of breaks all day and knee and back are sore." AR 677. The ALJ could reasonably find such activities inconsistent with Plaintiff's allegations of disabling symptoms.

For the reasons described above, the ALJ did not err in discounting Plaintiff's testimony because the ALJ provided specific, clear, and convincing reasons for doing so.

2. <u>The ALJ Did Not Commit Reversible Error in Assessing the Medical Opinions</u>

Plaintiff argues that the ALJ failed to properly evaluate the "treating medical source opinions." ECF No. 13 at 12. More specifically, Plaintiff argues the ALJ did not properly explain her evaluation of the opinions of Dr. Wilson and Dr. Dixit. *Id.* at 13. Plaintiff's argument is somewhat lacking in detail. It appears that Plaintiff argues that both Dixit and Wilson found limitations in lifting and carrying, and that the ALJ should have considered that those two opinions were consistent with each other rather than evaluating the consistency as to all the other evidence of record. ECF No. 13 at 12-14. Defendant contends that substantial evidence supports the ALJ's evaluation of the medical opinions. ECF No. 15 at 8.

With respect to medical opinions, new regulations apply to claims filed on or after March 27, 2017, which changed the framework for evaluation of medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies. Now an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict

11

a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2).

The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods*, 32 F.4th at 787. Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id*. at 792. In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### A. Dr. Kevin Wilson, M.D.

Plaintiff contends that Dr. Wilson provided a medical source statement and opined that Plaintiff could not perform any lifting or carrying. ECF No. 13 at 12. The ALJ discussed Dr. Wilson's opinions in detail, noting he had "offered multiple and varying opinions regarding claimant's functional ability." AR 26. The ALJ acknowledged the no lifting or carrying restriction. AR 26. The ALJ found Dr. Wilson's opinions "partially persuasive" but "overly restrictive" when it came to lifting or carrying. AR 26-27. The ALJ discussed the supportability of Wilson's opinions. AR 27. When considering supportability the ALJ considers "supporting explanations presented by the medical source." 20 C.F.R. § 404.1520c(c)(1). The ALJ found that "Dr. Wilson provided little detail in his multiple assessments, with no explanation and no citations to supporting diagnostic or objective evidence." AR 27. The ALJ also noted that Dr. Wilson had not reviewed any post-2019 medical records. *See* 20 C.F.R. § 404.1520c(c)(1) (in considering supportability the ALJ considers "the objective medical evidence and supporting explanations presented by the medical source").

12

The ALJ also explained that she considered the opinions of the State Agency medical consultants that found Plaintiff could perform light work. AR 26. The ALJ found those opinions partially persuasive, but found that Plaintiff had greater limitations, including in lifting and carrying. AR 26. The ALJ also explained how she considered the opinions of Terryol Noall, M.D., and the impairment assessment conducted by Andrew Bart, M.D. AR 27. Thus, the ALJ adequately considered the consistency of Wilson's opinion with other medical evidence of record. *See* 20 C.F.R. § 404.1520c(c)(2) (the more consistent a medical opinion is "with the evidence of other medical sources and nonmedical sources" the more persuasive it will be).

Plaintiff has not demonstrated that the ALJ erred in considering Wilson's opinion. The ALJ reasonably evaluated the persuasiveness of Wilson's opinion and evaluated the supportability and consistency of the opinion as required by the Regulations.

B. Rakesh Dixit, M.D.

Dr. Dixit saw Plaintiff in May and August of 2021. AR 674-75, 749-750. At the August 2021 visit, Plaintiff reported that pain medications and heat or icing were helping with pain. AR 749. She reported no sensory or strength changes and no gait or balance disturbance. *Id.* In the "history of present illness" description, Dr. Dixit wrote: "She has low-grade nagging pain in the lower back, which radiates to the leg, increases with activities." *Id.*

Dr. Dixit also completed a two-page check-box Medical Source Statement in August 2021. AR 744-45. Dr. Dixit checked a box that Plaintiff could lift or carry less than 10 pounds. AR 744. He did not cite any supporting medical findings. He indicated Plaintiff could stand and/or walk less than two hours in an 8-hour workday, and sit less than 6 hours in an 8 hour workday. Dr. Dixit also indicated restrictions related to postural maneuvers of climbing, balance, stopping, kneeling, crouching, and crawling. AR 745. For most of the limitations, Dr. Dixit left the line blank where he was to "cite supporting medical findings." AR 744-45. On the two instances where he did complete that line, he wrote "painful" and "L.S. Spine Pain." *Id.*

The ALJ found Dixit's opinion partially persuasive. AR 26. The ALJ found the opinion overly restrictive as to limitations on postural maneuvers, and inconsistent with Plaintiff's activities of daily living. AR 26. The ALJ noted that Dr. Dixit did not review additional medical

records "did not cite to supporting diagnostic or objective evidence, and provided no explanation for his highly restrictive assessment." AR 26. "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020).

Plaintiff's argument on the consideration of medical opinion evidence fails to demonstrate error. The only limitation Plaintiff specifically mentions from the opinions of Wilson and Dixit is the limitation on lifting/carrying. Under 20 C.F.R. § 1567(a), sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools." There is evidence in the record that Plaintiff can lift 10 pounds. *See, e.g.,* AR 81, 103. Plaintiff's function report states she can lift 10 pounds. AR 251. Additionally, Physician Assistant Hubbard found Plaintiff could lift and carry on an occasional basis 10 pounds. AR 36. The ALJ reasonably evaluated the persuasiveness of Dr. Dixit's opinion and evaluated the supportability and consistency of the opinion as required by the Regulations. That aspect of the ALJ's decision is supported by substantial evidence.

3. Formulation of the Residual Functional Capacity

Plaintiff argues that the ALJ improperly formulated the RFC because at one point in the ALJ's decision she states that Plaintiff is capable of light work. ECF No. 13 at 14. The Commissioner characterizes this statement by the ALJ as a "typographical error" and argues that it is clear from the totality of the decision that the ALJ found the claimant limited to sedentary work. ECF No. 15 at 10. The Court agrees that the limitation to sedentary work is clear from the ALJ's decision.

The ALJ's RFC finding states that "claimant has the residual functional capacity to perform sedentary work." AR 23. Then, in discussing the RFC formulation, the ALJ states, "the claimant's treatment records support finding that she can perform sedentary exertional work, with the above restrictions." AR 24. At one point in the decision, upon which Plaintiff relies, the ALJ states, "claimant's treatment records support finding that she can perform light exertional work." AR 27. However, there is no doubt from the overall reading of the discussion of the RFC that the ALJ found Plaintiff limited to sedentary work. AR 23-28.

1    If any doubt exists, it is eliminated by the ALJ's discussion at Step 5. The ALJ again
2  discusses Plaintiff's limitation to performing jobs at the sedentary exertional level. AR 29-30.
3  Importantly, the ALJ notes that the VE identified a job, Pre-Assembler, that is performed at the
4  light level, but the ALJ finds the job "would likely be precluded by the sedentary residual
5  functional capacity from Finding # 5."[3] AR 30. The Court finds that using the word "light"
6  rather than "sedentary" on one occasion was, in the context of the ALJ's entire decision, a
7  harmless typographical error. *See* Lewis *v. Berryhill*, 722 F.App'x 660, 661 (9th Cir. 2018) ("The
8  ALJ's typographical error, omitting the word 'no' from 'requiring [no] public contact,' is
9  harmless."); *see also McKenzie v. Kijakazi*, 2021 WL 4279015, * 15 (E.D. Cal. Sept. 21, 2021)
10 ("Notably, courts have excused inconsistent statements by ALJs 'as mere scrivener's errors' if the
11 intent of the ALJ is apparent from the record.").

12    4.   <u>Step 5 – Jobs existing in Significant Numbers in the National Economy</u>

13    Plaintiff argues that at Step 5 the Commissioner failed to meet its burden of identifying
14 occupations with a significant number of jobs existing in the national economy that Plaintiff
15 could perform, given her RFC. Plaintiff complains that the VE identified "just two jobs that
16 existed in significant numbers in the national economy that Plaintiff could do." ECF No. 13 at
17 15. Plaintiff then argues that one of these jobs, "touch-up screener," was misidentified because
18 the VE gave the wrong DOT code. *Id.* Defendant responds that the VE identified two
19 occupations existing in significant numbers that Plaintiff could perform, and that the nine-digit
20 DOT Code being off by one number when the job title was correctly identified is harmless error.
21 ECF No. 15 at 12.

22    George Bluth, the vocational expert (VE), testified that there would be jobs that Plaintiff,
23 with the RFC identified by the ALJ, could perform. AR 65-66. The VE testified these jobs
24 would allow a sit/stand option. AR 66. The VE identified assembler, DOT # 734.687-018,
25 touch-up screener, DOT # 726.684.010, and pre-assembler, DOT # 726.687-038.[4] AR 66-67.

---

[3] The sedentary RFC finding was made in a paragraph numbered "5" at AR 23.
[4] The DOT number for "touch-up screener" is 726.684.110. Plaintiff contends that because the VE was off by one digit in his testimony (726.684.010) that the Court should find that testimony (continued…)

The VE testified that his testimony was consistent with the DOT and that his opinion on the sit/stand option was informed by his professional experience. AR 67-68.

Plaintiff stipulated to the VE's qualifications (AR 63) and asked only one question on cross-examination. AR 68. Plaintiff's counsel did not ask any questions concerning the touch-up screener position, the sit/stand option, or the sufficiency of the job number's testimony. As a general matter, claimants must raise issues during the administrative process to preserve them for review. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("We have held that appellants must raise issues at their administrative hearings in order to preserve them on appeal before this Court."). In *Meanel*, a job numbers challenge at Step 5, the Ninth Circuit stated, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Id*. A failure to comply with this rule will only be excused "when necessary to avoid a manifest injustice." *Id*. In *Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2017), the Ninth Circuit reaffirmed the holding of *Meanel* and found that the claimant had forfeited any challenge to the vocational expert's job number estimates. *Id.*

Plaintiff offered no specific challenge to the VE's qualifications or to the VE's job numbers testimony before the agency, and thus this challenge is arguably forfeited. Defendant argues that the Plaintiff "failed to present evidence of job number to the ALJ, the Appeals Council, or this Court," and that if Plaintiff attempts to offer any evidence in a reply brief, the Court should find the argument waived. ECF No. 15 at 13. Plaintiff did not file a reply brief. Despite this potential waiver of the Step 5 argument, the Court will proceed to the merits of it.

The VE testified that there were 15,000 "assembler" jobs existing in the national economy that Plaintiff could perform, and 13,000 "touch-up screener" positions. AR 66-67. The ALJ

---

unsupported. This argument about an immaterial error is unconvincing. The VE testified the position was "touch-up screener" and that the position was sedentary. AR 67. The DOT number 726.684.010 that the VE mistakenly gave is for a position called "capacitor-pack-press operator" and is a medium exertional position. In the context of the VE's testimony overall, the VE was clearly not suggesting that Plaintiff could do medium work, which sits two exertional levels higher than her sedentary RFC.

16

found this represented a significant number of jobs in the national economy and that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers. AR 30. The 28,000 total jobs identified by the VE and in the ALJ's decision represents a significant number of jobs. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (25,000 national jobs is sufficient).

### 5. The Evidence submitted to the Appeals Council does not merit remand

Plaintiff's final argument is that new evidence from a medical exam conducted on May 25, 2023 (three months after the ALJ's decision) merits remand under *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157 (9th Cir. 2012). ECF No. 13 at 17. On that date, Physician Assistant Ben Hubbard examined her and certified that her knee limited her ability to work and opined that she could stand and walk fewer than two hours and sit for about three hours. *Id*. He also stated Plaintiff would be absent from work about four days a week. AR 38. Hubbard's evaluation was presented to the Appeals Council.

"[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes*, 682 F.3d at 1159-60. In *Brewes*, the Ninth Circuit foound that the Regulations allow a claimant to "submit new and material evidence to the Appeals Council . . . so long as that evidence relates to the period on or before the ALJ's decision." *Id*. at 1162, citing 20 C.F.R. § 404.970(b). New evidence is "material" if it "bears directly and substantially on the matter in dispute and if there is a reasonable possibility that the new evidence would have changed the outcome." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (cleaned up).

The Commissioner contends that Hubbard's opinion is of marginal relevance, as the relevant time period under consideration in the ALJ's decision ended in February 2023, three months before Hubbard's opinion. ECF No. 15 at 13. The Commissioner also states that Hubbard's opinion does not undermine the ALJ's decision and is "simply duplicative" of other opinions in the record. *Id.* at 14-15.

There is no indication that the evaluation by Hubbard some three-and-a-half months after the February 10, 2023 decision of the ALJ is retroactive. AR 36-40; *see Petersen v. Berryhill*, 737 F.App'x 329, 332 (9th Cir. 2018) (new medical evidence submitted "does not affect the ALJ's disability determination and does not warrant remand because the new evidence post-dates the period under review, is not retroactive to that period, and therefore would not reasonably affect the ALJ's decision."). Plaintiff states Hubbard's decision was "clearly rendered based on observations made during the preceding years of treatment." ECF No. 13 at 17. But Plaintiff includes no record cite for this assertion, and as the Commissioner argues, there appears to be no evidence in the record of prior treatment by Hubbard. Moreover, the Appeals Council concluded Hubbard's evaluation "does not show a reasonable probability that it would change the outcome of the decision." AR 2. The Court concurs and finds that the largely check-box evaluation by Hubbard, which does not support or explain its conclusions, and which was conducted three months after the relevant period, would not reasonably affect the ALJ's decision does not merit remand.

### VII. CONCLUSION

Plaintiff had the burden to prove disability. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) ("The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish entitlement to disability insurance benefits.") (cleaned up). The ALJ found that burden was not met. The Court has considered the ALJ's decision and Plaintiff's arguments and finds the ALJ's decision is supported by substantial evidence. *See Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (substantial evidence "means—and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation and citation omitted). Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 15) is GRANTED; and

////

3. The Clerk shall enter judgment in favor of the Commissioner and close this file.

SO ORDERED.

DATED: July 14, 2025.

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE